UNITED STATES of America,

v.

Kearney W. POOL, Defendant.

Case No. 4:04cr32–RH/AK.

United States District Court,
N.D. Florida,
Tallahassee Division.

April 26, 2008.

Dean Robert LeBoeuf, Brooks LeBoeuf Bennett etc., Tallahassee, FL, for Defendant.

Christopher P. Canova, Robert Del Stinson, U.S. Attorney, Tallahassee, FL, for United States of America.

## ORDER DENYING § 2255 MOTION

ROBERT L. HINKLE, Chief Judge.

This matter is before the court on the magistrate judge's report and recommendation (document 35), to which no objections have been filed.

The report and recommendation is correct and is adopted as the opinion of the court with this additional note.

Defendant pled guilty and was sentenced to 30 months in prison, a downward departure from the guideline range of 37 to 46 months. Defendant now asserts ineffective assistance of counsel in failing to obtain a better result. Defendant's assertion is that his attorney could have sought a continuance until after the decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and that a post-*Booker* sentence might have been lower.

The report and recommendation concludes that the claim rests on a series of speculations and that defendant has not established that his attorney was ineffective. That is correct.

In addition, it is even more clear—especially to me as the sentencing judge—that a post-*Booker* sentence would have been exactly the same as the sentence actually imposed. The Statement of Reasons entered in support of the Judgment imposing the sentence made this clear beyond any question.

A background explanation is in order. After the decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), I concluded that the mandatory federal sentencing guidelines were unconstitutional but that the guidelines could and should be considered on an advisory basis—precisely the result that the Supreme Court later reached in *Booker.* *See United States v. McKinney,* 339 F.Supp.2d 1314 (N.D.Fla.2004). Shortly

after I so ruled, however, the Eleventh Circuit held that *Blakely* did not affect the federal guidelines. *See United States v. Reese,* 382 F.3d 1308 (11th Cir.2004).

After *Reese,* I of course went back to imposing sentences under the mandatory guidelines. My consistent practice, however, was to determine not only the sentence to be imposed under the mandatory guidelines, but also to announce whether the same sentence would have been imposed if the guidelines were only advisory. Having anticipated the possibility that the guidelines would be deemed advisory (as set forth in *McKinney* ), my goal was to avoid unnecessary remands.

Thus, for example, after *Reese* but before *Booker,* I imposed the sentence that the Eleventh Circuit affirmed in *United States v. Pratt,* 438 F.3d 1264 (11th Cir. 2006). I announced on the record of the sentencing hearing that the sentence as imposed under the mandatory guidelines (as required by *Reese* ) would have been the same even if the guidelines were deemed advisory. *Id.* at 1268 & 1271. The Eleventh Circuit affirmed the sentence based on this statement, even though *Booker* had been decided in the interim. *Id.* at 1271–72; *see also id.* at 1268 ("During the sentencing hearing, which occurred while the Supreme Court was considering *Booker,* the district court judge presciently stated that he would impose the same sentence if the Guidelines were advisory."). This also happened in many other cases in which I imposed sentences after *Reese* but before *Booker.*

In *United States v. Mango,* 154 Fed. Appx. 165 (11th Cir.2005), in contrast, another case reviewing a sentence that I imposed after *Reese* but before *Booker,* I announced at the time of sentencing that I had not determined that the sentence under the mandatory guidelines would be unchanged if the guidelines were deemed advisory, thus making clear that, if in *Booker* the guidelines were held not mandatory, the sentence would appropriately have to be vacated. *Id.* at 168. (I did not announce that the sentence *would* be lower, because I thought it inadvisable to suggest to the defendant that I thought the sentence as actually imposed was too long.) The Eleventh Circuit vacated the sentence and remanded for resentencing based on *Booker.* I imposed a lower sentence.

In the case at bar, I was equally aware of the pendency of *Booker.* But I was already departing, based on defendant's extraordinary restitution. Such a departure was very unusual for me—probably the only departure I have ever made on this basis. Had the guidelines been advisory rather than mandatory, the sentence would have been the same. And I explicitly said this in the Statement of Reasons entered simultaneously with the judgment. The Statement of Reasons said, "This is the same sentence that would be imposed even if the federal sentencing guidelines were held non-binding as a result of *Blakely v. Washington,* [542 U.S. 296] 124 S.Ct. 2431 [2531, 159 L.Ed.2d 403] (2004)." [1]

In short, even had the sentencing been continued until after the decision in *Booker,* a lower sentence would not have been entered. And if the sentence were now vacated and we started all over again today, I still would not impose a lower sentence.

---

1. Because of a procedural glitch in the clerk's office, for a short period Statement of Reasons forms in this district were not docketed but were instead maintained in probation office files. The sentencing in the case at bar occurred during that period. I have reviewed the Statement of Reasons form from the probation files, which will now be docketed (as should have occurred at the time).

One other point deserves mention. At the time of sentencing, defendant's attorney apparently was concerned that trying to have the guidelines held non-binding might not have been a good thing for the defendant, because I might have imposed a sentence above the guideline range, rather than below the range. This was not a baseless concern. But for the extraordinary restitution, this sentence would not have been below the guideline range.

In short, defendant's attorney was not ineffective. To the contrary, he was very effective, obtaining for his client a very favorable outcome.

For these reasons and those set forth in the report and recommendation,

IT IS ORDERED:

1. The report and recommendation is ACCEPTED. The clerk shall enter judgment stating, "Defendant's motion for relief under 28 U.S.C. § 2255 (document 26) is DENIED WITH PREJUDICE." The clerk shall close the file.

2. The clerk shall docket the Statement of Reasons form as originally signed on December 11, 2004.

### REPORT AND RECOMMENDATION

ALLAN KORNBLUM, United States Magistrate Judge.

This matter is before the Court on Doc. 26, Motion to Vacate under 28 U.S.C. § 2255, and Doc. 27, Supporting Memorandum, by Kearney W. Pool.[1] Defendant is represented by counsel. The Government has filed its response, Doc. 30, and Defendant has filed a reply. Doc. 31. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

### BACKGROUND

Defendant pled guilty to a one-count Information for embezzlement in connection with health care, in violation of 18 U.S.C. § 669. Sentencing occurred on December 2, 2004, after being continued twice from the original August, 2004, setting—once, to allow "additional time to prepare ... to completely address several issued including, but limited to, restitution and sentencing guidelines," Doc. 15, and once, to allow Defendant time "to transfer out of state real estate, which is currently held in an IRA, as part of his restitution." Doc. 17. Defendant was sentenced to 30 months imprisonment and 3 years of supervised release and ordered to pay $250,000 in restitution. Doc. 20. He did not appeal his sentence, and he was released from prison on May 4, 2007. *See www.bop.gov.* The expiration of his sentence does not, however, moot this proceeding, as he remains "in custody" within the meaning of § 2255 since he is still subject to supervised release. *United States v. Brown,* 117 F.3d 471, 475 (11th Cir.1997).

At the time of Defendant's sentencing, the Eleventh Circuit had held that *Blakely* did not apply to the Sentencing Guidelines, and the district courts had been specifically directed to "continue to sentence pursuant to the Guidelines until such time as the Supreme Court rules on this issue." *United States v. Reese,* 382 F.3d 1308, 1312, 1312 n. 2 (11th Cir.2004); *see also United States v. Duncan,* 381 F.3d 1070 (11th Cir.2004). However, the Supreme Court had held oral argument in *United States v. Booker* on October 4, 2004, and the decision recognizing the discretionary nature of the Guidelines was rendered on January 12, 2005. *Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005).

1. This cause was administratively reassigned      to the undersigned on September 7, 2007.

Defendant now complains that trial counsel "did not conduct any significant legal research into how the *Blakely* decision ... applied to his sentencing proceedings" or "regarding the pending Supreme Court decisions in *Booker* and *Fanfan*." Doc. 26. He also complains that counsel "did not conduct any significant discussion with [him] about how the *Blakely* decision ... applied to the instant sentencing" or "regarding pending announcements from the Supreme Court in *Booker* and *Fanfan*." *Id.* He concluded that if counsel had sought "one additional continuance of the sentencing, if even for thirty more days, after considering the strategy of awaiting pending Supreme Court guidance, this Court may have allowed sentencing in January 2005—within ten days of the Supreme Court's *Booker* pronouncements, and with time left to seek sentencing reconsideration or to take a timely appeal." *Id.* In that event, Defendant "would likely have reaped some benefit ... under a discretionary Guidelines sentencing regime." *Id.* In particular, Defendant argues that under a discretionary sentencing system, he could have pressed certain arguments that were foreclosed under a mandatory system, e.g., "extraordinary family circumstances ... extraordinary acceptance of responsibility ... and diminished capacity ... because of diagnosed depression." *Id.* Defendant acknowledges that each of these "hypotheticals presupposes" the granting of a continuance, but because counsel did not seek one, "we can never know whether Mr. Pool would have been allowed that grace, but he has no reason to believe this Court would have rejected such an application in this case." *Id.* In Defendant's view, counsel's acts and omissions unduly prejudiced his "rights regarding voluntary waiver of Fifth and Sixth Amendment rights and his ability to present evidence of his clarifying rights under *Blakely*." Further, if counsel had sought the continuance of sentencing or

"made an informed tactical decision in the matter," then Defendant would have had "additional appellate alternatives to seek a fair sentence...." *Id.*

He asks the Court to declare the remainder of his sentence "unlawful and void" and to discharge him from confinement. As noted previously, Defendant was released from prison almost one year ago, and the only portion of his sentence remaining to be fulfilled is supervised release.

Having carefully considered the matter, the Court finds that the motion is absolutely meritless and hangs on a series of suppositions which do not meet the requirements of *Strickland*. First, there is nothing in the record to suggest that even if counsel had sought a third continuance, the Court would have granted it. The Court had been specifically directed by the Eleventh Circuit to continue sentencing as if *Blakely* did not apply to the Sentencing Guidelines. There was no guarantee of when the Supreme Court would issue its *Booker* decision, and it is just as likely that it could have come at the end of the term in June, 2005, as when it did, and the Court absolutely does not continue sentencings ad infinitum. The sentencing in this case had been rescheduled twice from its original setting, and the Presentence Report had been completed and objections had been filed thereto. While there is a possibility that the Court would have granted a third continuance, the Court is not convinced that there is not a reasonable probability that it would have granted even an additional thirty-day continuance. Even if counsel had requested a third continuance, and even if the Court had granted it, there was, as the Court noted, no timetable for the issuance of the *Booker* decision beyond the fact that everyone knew it would be issued no later than June 30, 2005, when the Supreme Court term

ended. Thus, even at the end of another thirty days, counsel might not have had the *Booker* decision in hand, and the Court would, in accordance with clear directions from the Eleventh Circuit, still have been required to sentence Defendant without consideration of *Blakely*.

As it stood, Defendant was sentenced to 30 months, seven months below the low end of the Guidelines sentence of 37–46 months. In fashioning that sentence, the Court specifically "started with the guidelines range" and then "considered all of the factors relevant to sentencing … set forth in Title 18, United States Code, Section 3553," before downwardly departing from the Guidelines range based on "extraordinary restitution." Doc. 30, Ex. 3 at 31. The Court stated that without Defendant's restitution efforts, he would have been sentenced to the middle of the Guidelines range, or approximately 41 months; however, in recognition that Defendant had "gone to extraordinary lengths" to make restitution "out of remorse and a sincere sense of responsibility and a sincere desire to make it right," the sentence was "11 months shorter than it would have been." *Id.* at 32–33 & 36. In imposing sentence, the Court also recognized Defendant's "family obligations," but while family circumstances "are a factor that can be taken into account," they "don't indicate in this case that there should not be a significant prison sentence." *Id.* at 36. In setting the terms of supervision, he ordered participation in a program of mental health treatment as directed by the supervising officer. *Id.* at 37.

Thus, although Defendant claims that application of the Guidelines as mandatory prevented him from arguing for a lesser sentence, it is clear from the transcript that the Court did in fact consider (1) Defendant's family circumstances, which it found to be typical and therefore not justifying of a further reduction, (2) his acceptance of responsibility, which resulted in a three-point adjustment for acceptance of responsibility and a sentence below the Guidelines range, and (3) his mental health issues, for which the Court suggested post-release treatment and which could have been argued as grounds for departure before *Booker* under the Guidelines. *See* U.S.S.G. § 5K2.13 (sentence below guideline range may be warranted if defendant committed offense while suffering from significantly reduced mental capacity).

Furthermore, counsel has stated that he did in fact consider the ramifications of a decision in *Booker* making the Guidelines advisory only. Doc. 30, Ex. 1. According to counsel, he feared that if the Court were given total discretion in sentencing, then because of the amount of loss and the abuse of trust in this case, Defendant "might receive a sentence greater than that called for by the high end of the Guidelines range." *Id.* Therefore, he determined that it was in Defendant's best interest to go forward with sentencing where his exposure would be capped at 46 months and argue for departure, a strategy which he discussed with Defendant. *Id.*

Defendant does not deny that counsel discussed this strategy with him but claims that he did not knowingly waive his right to request the third continuance pending a decision in *Booker* because he did not understand "the gamble he waived off, but rather only concurred that he would like to be finished with this matter." Doc. 31. The Court believes that the analysis comes back around to the same issues of supposition, however, for even if counsel had sought the continuance, and even if the Court had granted it, there was no guarantee of when *Booker* would be decided or how it would be decided, and counsel's suggestion that the decision was imminent at the time of Defendant's sentencing is,

unless instant counsel has an undisclosed hotline to the Supreme Court, another matter of supposition. But even then, with all things panning out in Defendant's favor, the question remains whether there is a reasonable probability that the Court would have sentenced Defendant any differently than it did. That question is answered in the negative, as there is nothing in the record to suggest that the Court felt constrained to impose a mandatory Guidelines sentence, and indeed, the fact that the Court departed downwardly plainly indicates the contrary. Counsel's decision to forego a third request for continuance was absolutely reasonable in light of the circumstances, as there were no guarantees that a gamble in the other direction would have paid off, and in fact, it could have worked substantially to Defendant's detriment.

*CONCLUSION*

Having carefully considered the matter, the Court finds that counsel's decisions in this case did not violate *Strickland,* and thus, Defendant did not receive ineffective assistance of counsel. In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, Doc. 26, be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this *10th* day of March, 2008.